# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:13cv334

| | |
|---|---|
| RACHEL PALACINO and JOHN PALACINO, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | ORDER |
| BEECH MOUNTAIN RESORT, INC., ) ) | |
| Defendant. ) ) | |

Pending before the Court are Defendant's Daubert motion [# 22] and Plaintiffs' Motions to Exclude Expert Testimony [# 26 & #28]. Plaintiffs brought this action asserting claims for negligence and loss of consortium against Defendant. The claims arise out of an accident at a ski resort where Plaintiff R. Palacino contends that she was hit by falling ice. The parties now move to exclude the expert witnesses of the opposing side. The Court **DENIES** the motions [# 22 & # 26] and **GRANTS** the motion [# 28].

**I.    Legal Standard**

The introduction of expert testimony in a federal court sitting in diversity is governed by the Federal Rules of Evidence. See <u>Bryte ex rel. Bryte v. Am. Household, Inc.</u>, 429 F.3d 469, 476 (4th Cir. 2005). Specifically, Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > **(b)** the testimony is based on sufficient facts or data;
> >
> > **(c)** the testimony is the product of reliable principles and methods; and
> >
> > **(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The trial court is tasked with performing the basic gatekeeping function of insuring that any expert testimony is both reliable and relevant. Daubert v. Merrell Dow Pharmas., Inc., 509 U.S. 579, 589, 113 S. Ct. 2786, 2795 (1993); Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147, 119 S. Ct. 1167, 1174 (1999); U.S. v. Crisp, 324 F.3d 261, 265 (4th Cir. 2003). Thus, the trial court's role in determining whether to admit expert testimony has two prongs: (1) is the expert testimony reliable; and (2) is the expert testimony relevant to a fact at issue. Daubert, 509 U.S. at 592-93, 113 S. Ct. at 2796.

First, the Court must determine whether the proposed expert testimony is reliable. "The first prong of this inquiry necessitates an examination of whether

the reasoning or methodology underlying the expert's proffered opinion is reliable – that is, whether it is supported by adequate validation to render it trustworthy." Westberry v. Gislaved Gummi AB, 178 F.3d 257, 260 (4th Cir. 1999). In Duabert, the Supreme Court set forth a non-exclusive list of factors for courts to consider when determining the reliability of scientific expert testimony. Fed. R. Evid. 702 advisory committee's note to 2000 amendment; Kumho Tire, 526 U.S. 149-50, 119 S. Ct. at 1175. These factors include: (1) whether the scientific theory or technique can be and has been tested; (2) whether the scientific theory or technique has been subject to peer review and publication; (3) the known or potential error rate of the particular scientific technique; (4) the existence and maintenance of standards that control the operation of the scientific technique; and (5) whether the scientific theory or technique has gained general acceptance within the scientific community. Daubert, 509 U.S. at 593-4, 113 S. Ct. at 2796-97; see also Fed. R. Evid. 702 advisory committee's note to 2000 amendment.

This list, however, is not a definitive checklist and, depending on the nature of the expert testimony proffered, many of these factors may not be applicable to the particular situation. Kumho Tire, 526 U.S. 150, 119 S. Ct. at 1175. "In making its initial determination of whether proffered testimony is sufficiently reliable, the court has broad latitude to consider whatever factors bearing on validity that the court finds to be useful; the particular factors will depend upon the

3

unique circumstances of the exert testimony involved." Westberry, 178 F.3d at 261; see also U.S. v. Baptiste, 596 F.3d 214, 222 (4th Cir. 2010); Fed. R. Evid. 702 advisory committee's note to 2000 amendment.

In short, it is the role of the trial court to ensure that an expert witness, whether that witnesses bases his or her opinion on personal experience, scientific techniques, or professional studies, "employs in the courtroom the same level of intellectual rigor that characterized the practice of an expert in the relevant field." Kumho Tire, 526 U.S. 150, 119 S. Ct. at 1175. While the Court has broad latitude in applying this flexible approach to the admission of expert testimony, the Court should focus its inquiry on the principles and methodology the expert employs, rather than the conclusions reached by the expert. Daubert, 509 U.S. at 595, 113 S. Ct. at 2797; see also Pugh v. Louisville Ladder, Inc., 361 F. App'x 448, 452 (4th Cir. 2010); Fed. R. Evid. 702 advisory committee's note to 2000 amendment.

Second the Court must determine whether the expert's testimony is relevant. Daubert, 509 U.S. at 592-93, 113 S. Ct. at 2796. The expert testimony satisfies this second prong of the inquiry where the proffered testimony is relevant to the facts at issue. Westberry, 178 F.3d at 260. "The focus of the second prong has, thus, been described as 'fit.'" Bourne ex rel. Bourne v. E.I. DuPont de Nemours & Co., 85 F. App'x 964, 966 (4th Cir. 2004). The party offering the expert testimony has the burden of establishing the admissibility of the testimony by a

4

preponderance of proof. Smith v. Wyeth-Ayerst Labs. Co., 278 F. Supp. 2d 684, 691 (W.D.N.C. 2003) (Voorhees, J.).

**II.     Analysis**

Both Plaintiffs and Defendant moves to exclude the expert testimony of the opposing side. Defendant moves to exclude the testimony of Alan Campbell and Scott Conklin. Plaintiffs move to exclude the testimony of Kenneth Crump and Paul Baugher. Accordingly, the Court must perform its gatekeeping function and determine whether the proffered expert testimony of the four experts is reliable and relevant. The Court will consider each of the four experts separately.

**A. Alan Campbell**

Plaintiffs retained Alan Campbell as an expert to testify at trial. Campbell is an engineer and life safety consultant with over 25 years of engineering experience. (Ex. 4 to Def.'s Mem. Supp. Daubert Mot. at p. 7.) Campbell has a bachelor of science in civil engineering from The Citadel and a master of science in applied psychology from Clemson University. (Id.) Campbell has testified as an expert in numerous cases. (Id. at pp. 10-16.)

In summary, Campbell's proffered testimony is that the accident that caused Plaintiff R. Palacino's injury should have been preventable had Defendant taken additional protective measures to prevent the collection of ice and icicles over the pedestrian path. (Id. at p. 4.) Specifically, Campbell opines that Defendant could

5

have installed snow guards and gutters on the overhanging roof. (Id. at p. 6.) Campbell based his opinion on numerous documents, industry standards, various publications, climate data, and patent applications.

Upon a review of the opinion and the evidence in the record, the Court finds that Plaintiffs have sufficiently met their burden of establishing the admissibility of Campbell's testimony. First, the Court finds that this testimony is sufficiently reliable. Engineering testimony, such as the testimony proffered by Campbell, may not require a strict application of the Daubert factors. Kumho Tire, 526 U.S. at 150, 119 S. Ct. at 1175. Here, Campbell formed his opinion based on his years of experience as an engineer, his education, and after reviewing numerous documents, industry publications, and industry standards. The reasoning, principles, and methodology employed by Campbell in reaching his opinion are reliable.

In fact, the bulk of Defendant's argument is more properly viewed as an attack on the validity of the opinion itself rather than the method and principles used to reach that opinion. Defendant's arguments go more to the weight a jury should afford the testimony rather than its admissibility. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596, 113 S. Ct. at 2798. Defendant

may certainly cross examine Campbell as to many of the points raised in its motion and argue to the jury that they should give little weight to the testimony for many of the reasons set forth in its briefs. Plaintiffs, however, have met their burden of demonstrating that the testimony satisfies the reliability prong of Daubert.

Finally, there is no reasonable argument that Campbell's testimony is not relevant to an issue of fact in the case. Whether Defendant owned a duty to Plaintiff R. Palacino and whether it breached any duty by failing to take steps to limit the accumulation of ice over the pedestrian walkway are factual issues at the heart of this litigation. Campbell's testimony addresses these very issues and is relevant to an issue of fact in this case. Any contention to the contrary lacks any legal merit. Accordingly, the Court **DENIES** Defendant's Daubert Motion [# 22] as to Alan Campbell.

### B. Scott Conklin

Plaintiffs also retained Scott Conklin as an expert in this case. Conklin is a licensed architect with approximately twenty-five years of experience. (Ex. 6 to Def.'s Mem. Supp. Daubert Mot. at p. 2.) Plaintiffs intend to offer the expert testimony of Conklin in support of their contention that Defendant failed to take adequate steps to protect against the risk of falling ice and snow from the View Haus Tower onto the pedestrian walkway. (Ex. 2 to Def.'s Mem. Supp. Daubert Mot. at pp. 6-11.) Specifically, Conklin opines that Defendant could have utilized

a number of building designs to minimize or reduce the risk of ice formation on the roof of the View Haus Tower. (Id.) In forming his opinion, Conklin reviewed a number of industry publications, insurance industry publications, litigation materials related to the proceedings, North Carolina building codes, architectural drawings, and a personal site visit to the Beech Mountain Resort. (Id. at pp. 12-13.)

For the same reasons that the expert testimony of Campbell satisfies the Duabert criteria, the Court finds that the proffered testimony of Conklin is reliable and relevant. Again, Defendant may subject Conklin to vigorous cross examination as to most of the issues raised by it in its motion and attempt to persuade the jury that it should accord little weight to Conklin's testimony and that it was not negligent in this case because it undertook sufficient steps to remove ice from the View Haus Tower. Accordingly, the Court **DENIES** Defendant's Daubert Motion [# 22] as to Scott Conklin.

**C. Paul Baugher**

Defendant retained Paul Baugher to testify as an expert in this case. Baugher is currently the risk manager for Boyne West Resorts. (Ex. B to Pls.' Mot. Exclude Expert Test. of Paul Baugher at p. 17.) In his role as risk manager, Baugher oversees the safety and risk management operations at four western ski resorts. (Id.) Baugher has a long history of dealing with ski safety related to snow

8

and ice, especially risk associated with avalanches. (Id. at pp. 2-3, 17-20.) Baugher has testified as an expert witness in other cases. (Id. at pp. 3, 16.) In summary, Baugher offers the following opinions:

> 6.1 Snow and ice on buildings, structures and objects are naturally present and expected conditions inherent in Beech Mountain's winter mountain environment.
>
> 6.2 The risk of injury from falling icicles, snow, and or ice, at ski areas, including Beech Mountain is inherent in the winter mountain environment and the sport of skiing.
>
> 6.3 Beech Mountain maintained reasonably safe premises on Jan. 15, 2011. There were no unusual or dangerous conditions with respect to the risk of falling icicles, snow, or ice.
>
> 6.4 Beech Mountain used reasonable methods and met the industry standard of care by using commonly accepted customs and practices to reduce the inherent risk of falling snow and ice from its buildings, facilities, and structures including the View Haus tower on Jan. 15, 2011.
>
> 6.5 Beech Mountain used reasonable methods and met the industry standard of care by reducing the inherent risk of falling snow and ice from its buildings, facilities, and structures including the View Haus to a reasonable level on Jan. 15, 2011.
>
> 6.6 Ms. Palacino's accident on Jan. 15, 2011 was not caused by the actions or inactions of Beech Mountain. Beech Mountain used appropriate methods to reduce this inherent risk to a reasonable level. This accident was a random occurrence of the inherent risk of falling snow and ice in the winter ski area environment.

(Id. at p. 21.) Baugher based his opinions on his years of experience in the ski industry, as well as litigation materials, interviews, the photos taken by Kenneth Crump, and a site inspection. (Id. at pp. 3-4.)

9

Upon a review of the record and the relevant legal authority, the Court finds that the methodology and reasoning of Baugher are sufficiently reliable to satisfy the requirements of Rule 702 and Daubert. Baugher has a long history of working in risk management in ski resorts. While much of this work may have dealt with the mediation of snow and ice accumulating in areas other than on roofs, the Court finds that his experience is sufficient to allow his testimony as to general matters of snow and ice accumulation at winter mountain ski areas and the danger posed by such accumulation, including on the roof of the View Haus Tower. Moreover, the Court finds that his testimony is also reliable as to industry norms and practices as to how snow and ice is typically removed to reduce the risk from its accumulation. Counsel for Plaintiffs may certainly cross examination Baugher as to his specific knowledge and experience with ski resorts in Western North Carolina, but the Court finds that Defendant has met its burden of demonstrating that Baugher's opinion is reliable and relevant to this dispute. Accordingly, the Court **DENIES** the Motion to Exclude Expert Testimony [# 26].

### D. Kenneth T. Crump, P.E.

Defendant retained Kenneth Crump as an expert to testimony in this case. Crump is a professional engineer with many years of experience. (Ex. B to Pls.' Mot. Exclude Expert Test. of Kenneth Crump at pp. 16-17.) Crump has a bachelor of science in civil engineering from the University of North Carolina at Charlotte.

(Id. at p 17.)   Crump offers four opinions in this matter:

1. The falling ice reported at Beech Mountain Resort on January 15, 2011, did not result from a neglect to take reasonable measure to prevent or reduce roof edge icing.

2. The building alterations suggested by the Conklin and Campbell Reports had not been required by any applicable laws, codes or ordinances, and would not prevent ice dam formation, icicle formation or eliminate ice or snow falling from roofs at the Beech Mountain Resort.

3. Beech Mountain had not been required by any applicable laws, codes or ordinances to alter the original design of the View Haus building, which was designed by licensed architects and constructed more than 40 years ago.

4. Warning that Beech Mountain Resort is a high mountain ski environment was provided.

(Id. at p. 14.)  Crump based his opinions on an on-site examination of premises, reports of Plaintiffs' experts, litigation materials, industry publications, and climate data.  (Id. at p. 3.)   Plaintiffs move only to exclude opinions one and four.

As a threshold matter, Crump's opinion that a warning was provided is not the proper scope of expert testimony from an engineer.  To the extent that Defendant intends to offer the testimony of Crump that the warnings provided by Defendant to Plaintiff R. Palacino were sufficient to place her on notice to look up

and watch for ice falling off the View Haus Tower, Defendant has failed to offer any argument or evidence demonstrating that Crump is qualified to provide such testimony and that the opinion is reliable. Moreover, the fact that Defendant posts a sign on its premises warning that Beech Mountain is a high mountain environment is a factual statement, and it will be up to the jury to determine whether this warning was sufficient to alert Plaintiff R. Palacino as to the specific risks she might encounter while visiting Defendant's premises.

Similarly, Defendant has failed to demonstrate that Crump's proffered testimony as to opinion one is reliable. Defendant has not demonstrated that Crump has the experience or expertise to testify as an expert witness as to industry practices for ice removal. In short, any such testimony fails the reliability prong of Daubert. While Crump may testify as an expert as to the design and function of the roof of the View Haus Tower, as well as why the expert opinions of Plaintiffs' experts would not prevent ice and snow from falling from the roof, he may not testify as to whether the procedures used by Defendant to manually remove the ice by knocking it down is a common industry practice in ski resorts and that this procedure was sufficient to satisfy any duty of care owed to Plaintiff R. Palacino.[1]

---

[1] The distinction is a fine line, but an important one. While an expert with Crump's qualifications and experience could perhaps even testify that in his opinion no roof design or alteration to the roof could ever completely eliminate the formation of roof-edge ice on a roof, and that some manual removal of ice would always be necessary, he could not testify that the manual procedure used by Defendant to remove that ice met industry standards for ice removal at ski resorts.

12

The Court **GRANTS** the Motion to Exclude Expert Testimony of Kenneth T. Crump [# 28] and excludes the testimony of Crump as to the proffered opinions number one and four. The Court finds that Crump's proffered testimony as to opinions number two and three are reliable and relevant, and he may testify as to these matters at trial.

III. Conclusion

The Court **DENIES** Defendant's Daubert motion [# 22] and Plaintiffs' Motions to Exclude Expert Testimony [# 26]. The Court **GRANTS** the Motion to Exclude Expert Testimony [# 28].

Signed: December 11, 2015

Dennis L. Howell
United States Magistrate Judge