IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:13cv334

| | | |
|---|---|---|
| RACHEL PALACINO and JOHN PALACINO, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | ORDER |
| BEECH MOUNTAIN RESORT, INC., | ) ) | |
| Defendant. | ) ) | |

Pending before the Court is the Motion for Summary Judgment [# 35]. Plaintiffs brought this action asserting claims for negligence and loss of consortium against Defendant. Defendant moves for summary judgment on the claims. The Court **DENIES in part** and **GRANTS in part** the Motion for Summary Judgment [# 35].

### I.  Background[1]

Defendant owns and operates Beech Mountain Resort (the "Resort"), which offers snow ski-related activities. (Pls.' Compl. ¶¶ 3, 7; Def.'s Answer. ¶¶ 3, 7.)

---

1  The Court has disregarded those statements of fact of the parties where the evidence cited does not support the statement contained in their statement of undisputed facts submitted to the Court or that otherwise do not comply with the Court's March 27, 2015, Order.

-1-

The Resort has a sign posted in several places on the premises that warns visitors of the possibility of snow and ice on stairs and walkways. (Pls.' Statement Material Facts ("Pls.' Statement) ¶ 27; Def.'s Resp. to Pls.' Statement Material Facts ("Def.'s Resp.") ¶ 27; Def.'s Statement Undisputed Facts ("Def.'s Statement") ¶ 23; Pls.' Resp. Def.'s Statement Undisputed Facts ("Pls.' Resp.") ¶ 23.) This sign states: "Ski Beech Caution! You are in a High Mountain Environment & May Encounter Snow & Ice on Stairs & Walkways. Be Aware and Watch Your Step." (Pls.' Statement ¶ 27; Def.'s Resp. ¶ 27; Def.'s Statement ¶ 23; Pls.' Resp. ¶ 23.)

Visiting high mountain environments like Beech Mountain also carries an inherent risk of injury from falling ice or snow. (Def.'s Statement ¶ 20; Pls.' Resp. 20.) In fact, one cannot eliminate the risk of falling ice or snow from roofs. (Def.'s Statement ¶ 21; Pls.' Resp. 21.) Although Defendant has several signs warning visitors to watch their step, it has never posted signs specifically warning visitors of the danger of falling ice or snow or warning visitors to look up for falling ice and snow. (Pls.' Statement ¶ 29; Def.'s Resp. ¶ 29; Adams Dep. 165:23-166:7.) Plaintiff R. Palacino had also never heard of the possibility of ice falling and hitting someone while the individual was at a ski resort. (Pls.' Statement ¶ 30; Def.'s Resp. ¶ 30.)

On January 15, 2011, Plaintiff was a visitor at the Resort. (Def.'s Statement ¶ 1; Pls.' Resp. ¶ 1.) The high temperature for Beech Mountain on January 15, 2011, was 20 degrees Fahrenheit and the low temperature was 11 degrees Fahrenheit. (Def.'s Statement ¶ 10; Pls.' Resp. ¶ 10.) Plaintiff R. Palacino was aware that the Resort received snowfall prior to her arrival. (R. Palacino Dep. 74:7-13, Nov. 17, 2014.)

Plaintiff R. Palacino skied the morning of January 15, 2011, and then took a break between 12:30 and 1:00. (R. Palacino Dep. 36:15-37:1, Nov. 17, 2014.) During this break, Plaintiff R. Palacino walked on a pedestrian walkway under the edge of the roof of the View Haus Tower towards a tunnel entrance. (Pls.' Statement ¶ 31; Def.'s Resp. ¶ 31.) The walkway was covered in snow and ice. (R. Palacino Dep. 56:13-22, Nov. 17, 2014.) Plaintiff R. Palacino noticed the signs warning her to watch the walkway while at the Resort, and she walked very gingerly on the icy walkways. (Pls.' Statement ¶ 28; Def.'s Resp. ¶ 28.) There was also a second story patio for Resort visitors above this walkway. (Def.'s Statement ¶ 4; Pls.' Resp. ¶ 4.) This patio or balcony was within Plaintiff R. Palacino's line of sight as she was walking towards the tunnel under the View Haus Tower roof. (Pls.' Statement ¶ 32; Def.'s Resp. ¶ 32.) Plaintiff R. Palacino, however, was not looking up while she was walking on the icy walkway and did

not see the roof of the View Haus Tower. (Pls.' Statement ¶¶ 28, 33; Def.'s Resp. ¶¶ 33, 33; R. Palacino Dep. 56:13-22, Nov. 17, 2014.)

As Plaintiff R. Palacino was walking on the walkway, something hit her head, knocking her to the ground. (R. Palacino Dep. 42:17-24, 68:7-9 Nov. 17, 2014.) Plaintiff R. Palacino did not see what hit her on the head. (Def.'s Statement ¶ 8; Pls.' Resp. ¶ 8.) Initially, Plaintiff R. Palacino thought somebody had dropped a snowboard that hit her or a kid had done something horrible. (Def.'s Statement ¶ 9; Pls.' Resp. ¶ 9.) Plaintiff R. Palacino, however, then saw a large chunk of ice fall from the View Haus Tower onto the ground. (R. Palacino Dep. 44:2-16.) Icicles or ice were also present on the View Haus Tower immediately following Plaintiff R. Palacino's accident. (Pls.' Statement ¶ 39; Def.'s Resp. ¶ 39.) After the accident, two Resort employees went to the tower attic and discovered chunky ice hanging below the edge of the roof. (Pls.' Statement ¶ 40; Def.'s Resp. ¶ 40.)

Prior to January 15, 2011, Defendant was not aware of any incidents involving ice falling from the View Haus Tower and had no knowledge of any ice falling from the tower. (Def.'s Statement ¶¶ 16-17; Pls.' Resp. ¶¶ 16-17.) Defendant, however, is aware that snow and ice can accumulate on the View Haus Tower during the winter. (Pls.' Statement ¶ 4; Def.'s Resp. ¶ 4.) Defendant is

also aware that roof edge ice accumulation presents a potential danger of falling on pedestrians located below the roof edge. (Pls.' Statement ¶ 3; Def.'s Resp. ¶ 3.)

Although Defendant does not have any written protocols or procedures related to the removal or reduction of accumulated ice (Pls.' Statement ¶ 10; Def.'s Resp. ¶ 10), Defendant does manually remove icicles hanging over walkways by knocking off the icicles with a pole that can reach the underside of the roof edge (Pls.' Statement ¶¶ 15, 20-21; Def.'s Resp. ¶¶ 15, 20-21). Defendant also tries to remove any accumulated roof edge snow and ice that it can reach from below, but it does not attempt to remove all the snow and ice that accumulates on the roof. (Pls.' Statement ¶ 18; Def.'s Resp. ¶ 18.)

## II.  Legal Standard

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of some alleged factual dispute between the parties will not defeat a motion for summary. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510 (1986); Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003). Rather, there must be a genuine issue of material fact. Dash v. Mayweather, 731 .3d 303,

310-11(4th Cir. 2013). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248, 106 S. Ct. 2510. Finally, in deciding a motion for summary judgment, the Court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). The Court, however, may consider the other materials in the record. Id.

### III. Analysis

#### A. There is a Genuine Question of Material Fact in this Case as to Whether Defendant was Negligent

In order to establish a *prima facie* case of negligence, a plaintiff must establish four elements: (1) that the defendant owed plaintiff a duty of care; (2) that defendant breached that duty; (3) that defendant's breach of duty was the actual and proximate cause of plaintiff's injury; and (4) that plaintiff suffered damage from the injury. Parker v. Town of Erwin, 776 S.E. 2d 710, 729 (N.C. Ct. App. 2015); Cucina v. City of Jacksonville, 530 S.E.2d 353, 355 (N.C. Ct. App. 2000). "Owners and occupiers of land have a duty to exercise reasonable care in the maintenance of their premises for the protection of lawful visitors." Bolick v. Bon Worth, Inc., 562 S.E.2d 602, 604 (N.C. Ct. App. 2002); see also Goynias v. Spa Health Clubs, Inc., 558 S.E.2d 880, 881 (N.C. Ct. App. 2002). In exercising

reasonable care, a landowner may not unnecessarily expose a lawful visitor to the land to danger and must provide a lawful visitor with a warning of any hidden hazards of which the landowner has either express or implied knowledge. Bolick, 562 S.E.2d at 604; Waddell v. Metro. Sewerage Dist. Buncombe Cnty.¸ 699 S.E.2d 469, 472 (N.C. Ct. App. 2010). A determination of whether the landowner exercised reasonable care is "judged against the conduct of a reasonably prudent person under the circumstances." Goynias¸ 558 S.E.2d at 881 (internal quotation and citation omitted); Cone v. Watson¸ 736 S.E.2d 210, 212 (N.C. Ct. App. 2012).

A landowner, however, has no duty to warn or protect visitors from dangers or conditions that are open and obvious. Overton v. Evans Logging, Inc.¸ 737 S.E.2d 416, 419 (N.C. Ct. App. 2013). Similarly, a landowner is not obligated to provide a warning to visitors of hazards where the visitor has equal or superior knowledge of the hazard. Bolick, 562 S.E.2d at 604. But, "'[w]hen a reasonable occupier of land should anticipate that a dangerous condition will likely cause physical harm to [a visitor], notwithstanding its known and obvious danger, the occupier of the land is not absolved from liability.'" Overton, 737 S.E.2d at 419 (quoting Lorinovich v. K Mart Corp., 516 S.E.2d 643, 646 (N.C. Ct. App. 1999)).[2]

---

[2] Defendant also requests that this Court apply the natural accumulation rule, see e.g. Parker v. Stripes, LLC, Civil Action No. 2:13-CV-28, 2014 WL 37285 (S.D. Tex. Jan. 6, 2014), but has failed to cite this Court to any North Carolina authority applying this legal doctrine. As such, Defendant's contention that the natural accumulation rule applies in this case is without merit and deserves no serious discussion from this Court.

Plaintiffs have come forward with sufficient evidence in this case to demonstrate genuine questions of material fact as to whether Defendant was negligent.  A genuine question of material fact exists as to whether Defendant had express or implied knowledge of the potential danger stemming from the accumulation of ice and snow on the edge of the roof of the View Haus Tower above the pedestrian walkway.  Defendant took actions to remove the icicles that accumulate on the roof edge above the walkway by knocking off the icicles from below with a metal pole.  There is ample evidence in the record to allow a jury to determine whether Defendant knew or should have known of the potential danger from falling ice from the View Haus Tower, thereby giving rise to a duty of care to Plaintiff R. Palacino.

Moreover, the potential danger from falling ice from the tower is not a known and obvious danger that warrants granting Defendant summary judgment.  The roof edge was approximately fifty feet above the pedestrian walkway and the signs posted warned visitors to watch their step due to the icy and snowy winter conditions at the Resort.  Plaintiff R. Palacino had never heard of the possibility of ice falling and hitting someone at a ski resort, and she was not looking up at the roof edge while she was walking on the walkway because of the icy walkway.

Similarly, whether Defendant breached its duty of care is also a question for

the jury. Defendant did not provide a warning to visitors of the potential for falling ice onto the pedestrian walkway. Whether Defendant should have done so, and whether the steps taken by Defendant to remove the ice and reduce any potential risk to visitors were reasonable under the circumstances are questions for the jury. Plaintiffs have sufficiently set forth a question of material fact as to whether the steps taken by Defendant breached its duty of care to Plaintiff R. Palacino.

Finally, there is a question of material fact as to whether falling ice from the Tower hit Plaintiff R. Palacino or whether something else was the proximate cause of her injuries. There is sufficient evidence in the record, however, that a jury could determine that ice falling from the edge of the Tower hit Plaintiff R. Palacino as she was walking on the pedestrian walkway, and that this falling ice caused her injuries.

### B. Defendant is Not Entitled to Summary Judgment on the Issue of Contributory Negligence

North Carolina remains one of the few states that continues to recognize the doctrine of contributory negligence. Bosley v. Alexander, 442 S.E.2d 82, 83 (N.C. Ct. App. 1994); Fox v. PGML, LLC, 744 S.E.2d 483, 486 (N.C. Ct. App. 2013). As the North Carolina Court of Appeals explained in Bosley:

> Contributory negligence is "negligence on the part of the plaintiff which joins, simultaneously or successively, with the negligence of the defendant ... to produce the injury of which the plaintiff complains."

> Jackson v. McBride, 270 N.C. 367, 372, 154 S.E.2d 468, 471 (1967). The defendant bears the burden of proving that certain acts or conduct of the plaintiff constituted contributory negligence. Atkins v. Moye, 277 N.C. 179, 176 S.E.2d 789 (1970); Mims v. Dixon, 272 N.C. 256, 158 S.E.2d 91 (1967). The defendant must prove by the greater weight of the evidence that the plaintiff's negligence was one of the proximate causes of his injury or damages. Clark v. Bodycombe, 289 N.C. 246, 221 S.E.2d 506 (1976).

442 S.E.2d at 83-84. "Summary Judgment is rarely appropriate for contributory negligence issues." Fox, 744 S.E.2d at 486. "Only where plaintiff's own negligence discloses contributory negligence so clearly that no other reasonable conclusion may be reached is summary judgment to be granted." Jenkins v. Lake Montonia Club, Inc., 479 S.E.2d 259, 261 (N.C. Ct. App. 1997).

There is a question of material fact as to whether Plaintiff R. Palacino was exercising ordinary care in walking on the pathway; the evidence before the Court does not establish that Defendant is entitled to summary judgment on Plaintiff R. Palacino's claim of negligence based on the doctrine of contributory negligence. Whether or not Plaintiff R. Palacino's conduct constituted contributory negligence and bars her negligence claim is a question for the jury at trial.[3] The Court **DENIES** the Motion for Summary Judgment as to the negligence claim. Because

---

3 Defendant also raised the issue of assumption of the risks as a bar to Plaintiff R. Palacino's claim of negligence. The facts before the Court do not establish that, as a matter of law, Plaintiff R. Palacino assumed the risk that falling ice from a building would hit her if she utilized Defendant's facilities.

the Court finds that Plaintiff R. Palacino's negligence claim survives summary judgement, Plaintiff J. Palacino's loss of consortium claim also survives because it is derivative of Plaintiff R. Palacino's negligence claim. See Trivette v. Yount, 735 S.E.2d 306, 313 (N.C. 2012).

### C. Defendant is Entitled to Summary Judgment on the Claim for Punitive Damages

Punitive damages are available to a plaintiff in North Caroline in order to punish a defendant for its egregious wrongful acts and to deter the defendant and other individuals from committing similar wrongful acts. N.C. Gen. Stat. § 1D-1. A Plaintiff may recover punitive damages only where a defendant is liable for compensatory damages and the plaintiff proves the existence of one of the aggravating factors by clear and convincing evidence. N.C. Gen. Stat. § 1D-15. The three aggravating factors include: (1) fraud; (2) malice; and (3) willful or wanton conduct. N.C. Gen. Stat. § 1D-15(a). "To prevail on a claim for punitive damages, plaintiff must show that defendant's established negligence which proximately caused his injury reached a higher level than ordinary negligence; that it amounted to wantonness, willfulness, or evidenced a reckless indifference to the consequences of the act." Moose v. Nissan of Statesville, Inc., 444 S.E.2d 694, 697 (N.C. Ct. App. 1994); see also Byrd v. Adams, 568 S.E.2d 640, 642 (N.C. Ct. App. 2002).

Plaintiffs have not demonstrated a question of material fact as to whether Defendant's actions were willful or wanton.  Put simply, Plaintiffs did not present the Court with any evidence that would allow a jury to determine that Defendant's conduct was willful or wanton or otherwise warranted punitive damages.  The situation in this case is a far cry from that in Everhart v. O'Charley's Inc., 683 S.E.2d 728 (N.C. Ct. App. 2009), cited by Plaintiffs.  The evidence simply does not create a question of material fact as to whether Defendant acted with any conscious and intentional disregard of and indifference to Plaintiff R. Palacino's rights and safety.  See Everhart, 683 S.E.2d at 736.

Prior to January 15, 2011, Defendant was not aware of any incidents involving ice falling from the View Haus Tower and had no knowledge of any ice falling from the tower.  Moreover, it is undisputed that Defendant undertook actions to remove ice from the roof edge.  While it is a question for the jury as to whether the actions of Defendant were legally sufficient or whether they breached a duty of care to Plaintiff R. Palacino, the record is devoid of evidence that could support a finding of punitive damages against Defendant.  Finally, the lone statement by the ski patrol member who was attempting to treat Plaintiff R. Palacino in the accident's immediate aftermath, is insufficient as a matter of law to create a question of material fact as to whether Defendant acted with the requisite

fraud, malice, or willful or wanton conduct to warrant punitive damages in this case. Accordingly, the Court **GRANTS** the Motion for Summary Judgment as to the punitive damage claim.

### IV.  Conclusion

The Court **GRANTS in part** and **DENIES in part** the Defendant's Motion for Summary Judgment [# 35].  The Court **GRANTS** the Motion for Summary Judgment [# 35] as to Plaintiffs' claim for punitive damages.  The Court **DENIES** the Motion for Judgment [# 35] as to the negligence and loss of consortium claims.

Signed: December 11, 2015

Dennis L. Howell
United States Magistrate Judge